# SUPREME COURT OF THE UNITED STATES

## ELMBROOK SCHOOL DISTRICT *v.* JOHN DOE
### 3, A MINOR BY DOE 3'S NEXT BEST FRIEND
### DOE 2, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 12–755   Decided June 16, 2014

The petition for a writ of certiorari is denied.

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting from the denial of certiorari.

Some there are—many, perhaps—who are offended by public displays of religion. Religion, they believe, is a personal matter; if it must be given external manifestation, that should not occur in public places where others may be offended. I can understand that attitude: It parallels my own toward the playing in public of rock music or Stravinsky. And I too am especially annoyed when the intrusion upon my inner peace occurs while I am part of a captive audience, as on a municipal bus or in the waiting room of a public agency.

My own aversion cannot be imposed by law because of the First Amendment. See *Ward* v. *Rock Against Racism*, 491 U. S. 781, 790 (1989); *Erznoznik* v. *Jacksonville*, 422 U. S. 205, 210–211 (1975). Certain of this Court's cases, however, have allowed the aversion to religious displays to be enforced directly *through* the First Amendment, at least in public facilities and with respect to public ceremonies—this despite the fact that the First Amendment explicitly favors religion and is, so to speak, agnostic about music.

In the decision below, the en banc Court of Appeals for the Seventh Circuit relied on those cases to condemn a suburban Milwaukee school district's decision to hold high-school graduations in a church. We recently con-

fronted and curtailed this errant line of precedent in *Town of Greece* v. *Galloway*, 572 U. S. ___ (2014), which upheld under the Establishment Clause the saying of prayers before monthly town-council meetings. Because that case made clear a number of points with which the Seventh Circuit's decision is fundamentally inconsistent, the Court ought, at a minimum, to grant certiorari, vacate the judgment, and remand for reconsideration (GVR).

## Endorsement

First, *Town of Greece* abandoned the antiquated "endorsement test," which formed the basis for the decision below.

In this case, at the request of the student bodies of the two relevant schools, the Elmbrook School District decided to hold its high-school graduation ceremonies at Elmbrook Church, a nondenominational Christian house of worship. The students of the first school to move its ceremonies preferred that site to what had been the usual venue, the school's gymnasium, which was cramped, hot, and uncomfortable. The church offered more space, air conditioning, and cushioned seating. No one disputes that the church was chosen only because of these amenities.

Despite that, the Seventh Circuit held that the choice of venue violated the Establishment Clause, primarily because it failed the endorsement test. That infinitely malleable standard asks whether governmental action has the purpose or effect of "endorsing" religion. See *County of Allegheny* v. *American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U. S. 573, 592–594 (1989). The Seventh Circuit declared that the endorsement test remains part of "the prevailing analytical tool for the analysis of Establishment Clause claims." 687 F. 3d 840, 849 (2012) (internal quotation marks omitted).* And here,

––––––––––

*More precisely, the court stated that "[t]he three-pronged test set

"the sheer religiosity of the space created a likelihood that high school students and their younger siblings would perceive a link between church and state." *Id.*, at 853.

In *Town of Greece*, the Second Circuit had also relied on the notion of endorsement. See 681 F. 3d 20, 30 (2012). We reversed the judgment without applying that test. What is more, we strongly suggested approval of a previous opinion "disput[ing] that endorsement could be the proper [Establishment Clause] test, as it likely would condemn a host of traditional practices that recognize the role religion plays in our society, among them legislative prayer and the 'forthrightly religious' Thanksgiving proclamations issued by nearly every President since Washington." 572 U. S., at \_\_\_ (slip op., at 11) (describing *County of Allegheny*, *supra*, at 670–671 (KENNEDY, J., concurring in judgment in part and dissenting in part)). After *Town of Greece*, the Seventh Circuit's declaration—which controlled its subsequent analysis—that the endorsement test remains part of "the prevailing analytical tool" for assessing Establishment Clause challenges, 687 F. 3d, at 849 (internal quotation marks omitted), misstates the law.

### Coercion

Second, *Town of Greece* made categorically clear that mere "[o]ffense . . . does not equate to coercion" in any manner relevant to the proper Establishment Clause analysis. 572 U. S., at \_\_\_ (slip op., at 21) (opinion of KENNEDY, J.). "[A]n Establishment Clause violation is not made out any time a person experiences a sense of affront from the expression of contrary religious views." *Ibid.* See

forth by the Supreme Court in *Lemon* v. *Kurtzman*, 403 U. S. 602 (1971), remains the prevailing analytical tool for the analysis of Establishment Clause claims." 687 F. 3d, at 849 (internal quotation marks and citations omitted). It then explained that the endorsement test has become "a legitimate part of *Lemon*'s second prong." *Id.*, at 850.

also *id.*, at ___ (THOMAS, J., concurring in part and con-curring in judgment) (slip op., at 7–8) (same).

Here, the Seventh Circuit held that the school district's "decision to use Elmbrook Church for graduations was religiously coercive" under *Lee* v. *Weisman*, 505 U. S. 577 (1992), and *Santa Fe Independent School Dist.* v. *Doe*, 530 U. S. 290 (2000). 687 F. 3d, at 854. *Lee* and *Santa Fe*, however, are inapposite because they concluded (however unrealistically) that students were coerced to engage in school-sponsored prayer. In this case, it is beyond dispute that no religious exercise whatever occurred. At most, respondents complain that they took offense at being in a religious place. See 687 F. 3d, at 848 (plaintiffs asserted that they "'felt uncomfortable, upset, offended, unwel-come, and/or angry' because of the religious setting" of the graduations). Were there any question before, *Town of Greece* made obvious that this is insufficient to state an Establishment Clause violation.

It bears emphasis that the original understanding of the kind of coercion that the Establishment Clause condemns was far narrower than the sort of peer-pressure coercion that this Court has recently held unconstitutional in cases like *Lee* and *Santa Fe*. "The coercion that was a hallmark of historical establishments of religion was coercion of religious orthodoxy and of financial support *by force of law and threat of penalty*." *Lee, supra*, at 640 (SCALIA, J., dissenting). See also *Town of Greece, supra*, at ___–___ (opinion of THOMAS, J.) (slip op., at 5–8).

As the Supreme Court of Wisconsin explained in a 1916 case challenging the siting of public high-school gradua-tions in local churches:

> "A man may feel constrained to enter a house of wor-ship belonging to a different sect from the one with which he affiliates, but if no sectarian services are carried on, he is not compelled to worship God contrary

to the dictates of his conscience, and is not obliged to do so at all." *State ex rel. Conway* v. *District Board of Joint School Dist. No. 6*, 162 Wis. 482, 490, 156 N. W. 477, 480.

### History

Last but by no means least, *Town of Greece* left no doubt that "the Establishment Clause must be interpreted 'by reference to historical practices and understandings.'" 572 U. S., at \_\_\_ (slip op., at 7–8). Moreover, "if there is any inconsistency between [a 'test' set out in the opinions of this Court] and . . . historic practice . . . , the inconsistency calls into question the validity of the test, not the historic practice." *Id.*, at \_\_\_ (ALITO, J., concurring) (slip op., at 12).

In this case, however, the Seventh Circuit's majority opinion said nothing about history at all. And there is good reason to believe that this omission was material. As demonstrated by *Conway*, the Wisconsin case mentioned above, public schools have long held graduations in churches. This should come as no surprise, given that "[e]arly public schools were often held in rented rooms, church halls and basements, or other buildings that resembled Protestant churches." W. Reese, America's Public Schools 39 (2005). An 1821 Illinois law, for example, provided that a meetinghouse erected by a Presbyterian congregation "may serve to have the gospel preached therein, and likewise may be used for a school-house for the township." Ill. Laws p. 153.

We ought to remand this case to the Seventh Circuit to conduct the historical inquiry mandated by *Town of Greece*—or we ought to set the case for argument and conduct that inquiry ourselves.

\*　　\*　　\*

It is perhaps the job of school officials to prevent hurt

feelings at school events. But that is decidedly not the job of the Constitution. It may well be, as then-Chief Judge Easterbrook suggested, that the decision of the Elmbrook School District to hold graduations under a Latin cross in a Christian church was "unwise" and "offensive." 687 F. 3d, at 869 (dissenting opinion). But *Town of Greece* makes manifest that an establishment of religion it was not.

In addition to being decided incorrectly, this case bears other indicia of what we have come to call "certworthiness." The Seventh Circuit's decision was en banc and prompted three powerful dissents (by then-Chief Judge Easterbrook and Judges Posner and Ripple). And it conflicts with decisions that have long allowed graduation ceremonies to take place in churches, see, *e.g.*, *Miller* v. *Cooper*, 56 N. M. 355, 356–357, 244 P. 2d 520, 520–521 (1952); *Conway*, 162 Wis., at 489–493, 156 N. W., at 479–481, and with decisions upholding other public uses of religious spaces, see, *e.g.*, *Bauchman* v. *West High School*, 132 F. 3d 542, 553–556 (CA10 1997) (sanctioning school-choir performances in venues "dominated by crosses and other religious images"); *Otero* v. *State Election Bd. of Okla.*, 975 F. 2d 738, 740–741 (CA10 1992) (upholding the use of a church as a polling station); *Berman* v. *Board of Elections*, 19 N. Y. 2d 744, 745, 226 N. E. 2d 177 (1967) (same).

According to the prevailing standard, a GVR order is potentially appropriate where "intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation." *Lawrence* v. *Chater*, 516 U. S. 163, 167 (1996) (*per curiam*). The Court has found that standard satisfied on numerous occasions where judgments were far less obviously undermined by a

subsequent decision of ours.

For these reasons, we should either grant the petition and set the case for argument or GVR in light of *Town of Greece*. I respectfully dissent from the denial of certiorari.