ALICE M. BATCHELDER, Circuit Judge,
concurring in part and concurring in the result.
CONCURRING IN PART
I agree that the Jefferson County Board of School Commissioners’ decision to con *596 tract with Kingswood does not violate the Establishment Clause and join parts I, II, and III of the court’s opinion, but I write separately because my reasoning differs from that of the lead opinion in part IV.
I.
As a threshold matter, while I concede that we are bound by our en banc decision holding that these Plaintiffs have standing as municipal taxpayers to bring this Establishment Clause claim — and hence, we must decide the merits of this case — I continue to believe that decision is not correct. See Smith v. Jefferson Cnty. Bd. of Sch. Comm’rs, 641 F.3d 197, 223-26 (6th Cir.2011) (en banc) (Batchelder, C.J., concurring in part and dissenting in part). This is an employment-contract dispute masquerading as an Establishment Clause case. The proof of the true nature of this case is partly found in the fact that the Plaintiffs seek monetary damages. Judicial relief in an Establishment Clause case is equitable in nature, taking the form of an injunction that undoes the government’s establishment of religion. See, e.g., Engel v. Vitale, 370 U.S. 421, 425, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (prohibiting public-school officials from leading students in classroom prayer). We do not grant monetary damages for violations of the Establishment Clause.
II.
The endorsement test applies here, but only because we are constrained to follow it at the present time. The Supreme Court recently handed down a watershed decision in Town of Greece v. Galloway, — U.S. —, 134 S.Ct. 1811, 188 L.Ed.2d 835 (2014). I disagree with the lead opinion’s characterization of Town of Greece as applying only to a subset of Establishment Clause claims such as legislative-prayer cases. But I also disagree with the opinion’s description of the status quo ante of Establishment Clause jurisprudence prior to Town of Greece, and would engage in a somewhat different analysis in reaching the conclusion that the local government’s action here is constitutional.
A.
The Establishment Clause of the First Amendment commands that “Congress shall make no law respecting an establishment of religion.” U.S. Const. amend. I, cl. 1. The Supreme Court has extended this prohibition to the States and their political subdivisions through the Fourteenth Amendment Due Process Clause. Everson v. Bd. of Educ., 330 U.S. 1, 15, 67 S.Ct. 504, 91 L.Ed. 711 (1947). For more than four decades, courts have struggled with how to decide Establishment Clause cases, as the governing framework has profoundly changed several times. As Justice Scalia — perhaps tongue-in-cheek, but absolutely accurately — observed in his concurrence in Van Orden v. Perry, 545 U.S. 677, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005), “I join the [principal opinion] because I think it accurately reflects our current Establishment Clause jurisprudence — or at least the Establishment Clause jurisprudence we currently apply some of the time.” Id. at 692, 125 S.Ct. 2854 (Scalia, J., concurring). This confusion has led our court to opine that the judiciary is confined to “Establishment Clause purgatory.” ACLU v. Mercer Cnty., 432 F.3d 624, 636 (6th Cir.2005).
We held three years ago that “[u]nder today’s Lemon [v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105 (1971) ] test, we ask: (1) whether the government’s predominant purpose was secular; (2) whether the government action has the purpose or effect of endorsing religion, and (3) whether the action fosters an excessive entanglement with religion.” Satawa v. Macomb Cnty. *597 Rd. Comm’n, 689 F.3d 506, 526 (6th Cir.2012) (citation, footnote, and internal quotation marks omitted). But as an inferior court, we must apply that articulation only in a manner that is fully consistent with each of the Supreme Court’s many decisions in this difficult area of law.
In Lemon, the Supreme Court held that a state action touching upon religion violates the Establishment Clause unless it (1) has a primarily secular purpose, (2) has an effect that neither advances nor inhibits religion, and (3) does not excessively entangle government with religion. Lemon, 403 U.S. at 612-13, 91 S.Ct. 2105. Although the Court soon thereafter described the Lemon test’s three prongs as merely factors that “are no more than helpful signposts,” Hunt v. McNair, 413 U.S. 734, 741, 93 S.Ct. 2868, 37 L.Ed.2d 923 (1973), it has never renounced them.
The Court’s application of Lemon has varied. For example, in Stone v. Graham, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (per curiam), the Court invalidated a Kentucky statute requiring the posting of the Ten Commandments in public-school classrooms because the statute lacked a secular purpose and therefore “violates the first part of the [Lemon ] test.” Id. at 43, 101 S.Ct. 192. The Court did not consider whether the statute also had the effect of advancing (or endorsing) religion, or entangled government with religion. See id. at 41-43, 101 S.Ct. 192. But in Bowen v. Kendrick, 487 U.S. 589, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988), after examining all three Lemon prongs, the Court upheld grants to private organizations, including religious organizations, for premarital-sex and pregnancy counseling under the Adolescent Family Life Act. See id. at 602-18, 91 S.Ct. 2105.
Occasionally the Court decides cases on grounds other than Lemon. For example, in Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the Court eschewed Lemon, instead examining history to conclude that conducting prayers at the outset of policymaking-body sessions is constitutional. See id. at 786-92, 103 S.Ct. 3330. Marsh declared the test to be that a legislative-prayer practice is constitutional so long as it does not “proselytize or advance any one, or [ ] disparage any other, faith or belief.” Id. at 794-95, 103 S.Ct. 3330.[1] The following year, the Court applied Lemon to uphold a publicly owned creche (i.e., a Christian nativity scene) on private land, but looked to history to inform its judgment that the Christmas display had a secular purpose, did not advance religion, and did not entangle government with religion. See Lynch v. Donnelly, 465 U.S. 668, 678-85, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984).
1.
Five years later, a narrow majority of the Supreme Court revised Lemon’s second prong, the “effects prong,” to hold that the test is “whether the challenged governmental practice has the purpose or effect of ‘endorsing’ religion.” Cnty. of Allegheny v. ACLU, Greater Pittsburgh Chapter, 492 U.S. 573, 592, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). This test requires a court to determine whether a “reasonable observer” would conclude that the state action is an endorsement of religion. Id. at 620, 109 S.Ct. 3086 (plurality opinion of Blackmun, J.). The five-Justice majority based this revision on Justice O’Connor’s *598 separate opinion in Lynch, positing that the Establishment Clause “prohibits government from appearing to take a position on questions of religious belief or from ‘making adherence to a religion relevant in any way to a person’s standing in the political community.’ ” Id. at 594, 109 S.Ct. 3086 (majority opinion) (quoting Lynch, 465 U.S. at 687, 104 S.Ct. 1355 (O’Connor, J., concurring)). Four Justices dissented from adopting the endorsement test, arguing that the Court should instead look to history and to whether anyone is being coerced by the state action to participate in religion. See id. at 657-70, 109 S.Ct. 3086 (Kennedy, J., concurring in the judgment in part and dissenting in part).
Since adopting the endorsement test in 1989, the Court has continued to modify the Establishment Clause’s governing framework, sometimes by revising the endorsement test. In 1997, the Court relegated Lemon’s third prong (entanglement) to being merely a factor in determining whether the government has violated Lemon’s second prong (effects), which in turn is violated when government endorses religion. See Agostini v. Felton, 521 U.S. 203, 232-33, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997).[2] Then in 2005, the Court held that the first prong of Lemon (purpose) is violated when a reasonable observer would conclude government is endorsing religion. McCreary Cnty. v. ACLU of Ky., 545 U.S. 844, 860, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005) (“By showing a purpose to favor religion, the government sends the ... message to ... nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members.... ” (internal quotation marks omitted)); id. at 883, 125 S.Ct. 2722 (O’Connor, J., concurring) (“The purpose behind the counties’ display is relevant because it conveys an unmistakable message of endorsement to the reasonable observer.”).[3] After McCreary, it is unclear whether Lemon can still be distinguished from the endorsement test.
The Court occasionally sets the endorsement test aside to decide Establishment Clause claims under a different test, or applies multiple tests. The Court invalidated benedictional prayers at public-school graduations not because they endorse religion, but because, the majority held, such prayers coerce school-age children to participate in a religious exercise, since they have no meaningful choice but to attend their graduation. Lee v. Weisman, 505 U.S. 577, 592, 594, 599, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). The Court later invalidated prayers before high-school football games, both under the endorsement test, and then separately and distinctly under Lee’s coercion test. Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 309-12, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000).[4]
*599 2.
Often it is not entirely clear precisely what test the Court applies, or how the Court’s approach should be characterized. This line of cases led Justice Scalia, joined by Justice Thomas, to opine in a case upholding the viewing of religious movies on school property outside of school hours:
As to the Court’s invocation of the Lemon test: Like some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried, Lemon stalks our Establishment Clause jurisprudence again, frightening the little children and school attorneys of Center Moriches Union Free School District. Its most recent burial, only last Term, was, to be sure, not fully six feet under: Our decision in [Lee ] conspicuously avoided the supposed “test” but also declined the invitation to repudiate it. Over the years, however, no fewer than five of the currently sitting Justices have, in their own opinions, personally driven pencils through the creature’s heart ... and a sixth has joined an opinion doing so.
Lamb’s Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 398, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) (Scalia, J., concurring in the judgment) (collecting cases).
More recently, the Court has looked to history, as it did in Marsh. In 2005, a four-Justiee plurality upheld a Ten Commandments display outside the Texas State Capitol by looking to the role of the Ten Commandments — and religion in general — throughout American history. Van Orden, 545 U.S. at 686-90, 125 S.Ct. 2854 (opinion of Rehnquist, C.J.). The plurality concluded:
Whatever may be the fate of the Lemon test in the larger scheme of Establishment Clause jurisprudence, we think it not useful in dealing with the sort of passive monument that Texas has erected on its Capitol grounds. Instead, our analysis is driven both by the nature of the monument and by our Nation’s history.
Id. at 686, 125 S.Ct. 2854. Justice Breyer supplied the fifth vote to hold that Lemon (and thus the endorsement test) did not apply, but wrote separately to assert that instead of history, in such “borderline cases” courts can devise “no test-related substitute for the exercise of legal judgment.” Id. at 700, 125 S.Ct. 2854 (Breyer, J., concurring in the judgment). While subsequent to Van Orden this court still applied the endorsement test to a Ten Commandments display, Mercer, 432 F.3d at 636, it bears noting that the Supreme Court held in Van Orden that there is a new, undefined class of cases to which the Lemon /endorsement test does not apply.[5] This left Justice Thomas lamenting the fact that the Supreme Court’s “jurispru *600 dence provides no principled basis by which a lower court could discern whether Lemon /endorsement, or some other test, should apply in Establishment Clause cases.” Utah Highway Patrol Ass’n v. Am. Atheists, Inc., — U.S. —, 132 S.Ct. 12, 14, 181 L.Ed.2d 379 (2011) (Thomas, J., dissenting from the denial of certiorari). He encouraged the Court to grant certiorari in a case “which squarely implicates the viability and application of the Lemon /endorsement test.” Id. at 22. This confusion was exacerbated in 2012, when the Supreme Court looked to history to conclude unanimously that the Establishment and Free Exercise Clauses of the First Amendment require a “ministerial exception” to employment laws for religious organizations and the ministers they employ. Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC, — U.S. -, 132 S.Ct. 694, 702-03, 705-08, 181 L.Ed.2d 650 (2012).[6] The Court decided that Establishment Clause case without any use of the Lemon /endorsement framework. Soon thereafter, Justice Alito agreed that “[t]his Court’s Establishment Clause jurisprudence is undoubtedly in need of clarity.” Mt. Soledad Mem’l Ass’n v. Trunk, — U.S. -, 132 S.Ct. 2535, 2535, 183 L.Ed.2d 692 (2012) (concurring in the denial of certiorari).
B.
Notwithstanding these statements from individual Justices, and the fact that the Court has recently taken different approaches in other contexts, this is a school-funding case, and so this court is required to adhere to the Lemon/endorsement framework. Prior to Allegheny, the Supreme Court evaluated public funding cases under the first version of the Lemon test. E.g., Bowen, 487 U.S. at 605-09, 108 S.Ct. 2562. The Supreme Court has decided at least three Establishment Clause cases concerning school funding since the Court narrowly adopted the endorsement test a quarter-century ago in Allegheny, and in each of those cases the Court applied some version of the Lemon/endorsement test. See Zelman v. Simmons-Harris, 536 U.S. 639, 652-55, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002); Mitchell, 530 U.S. at 835-36, 120 S.Ct. 2530 (plurality opinion); Agostini, 521 U.S. at 234-35, 117 S.Ct. 1997. Moreover, two years before the Court revised Lemon with the endorsement test, the Court added in a footnote that courts should not consult history for Establishment Clause cases involving public schools. Edwards v. Aguillard, 482 U.S. 578, 583 n. 4, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (“Such a historical approach is not useful in determining the proper roles of church and state in public schools, since free public education was virtually nonexistent at the time the Constitution was adopted.”).[7] Edwards’s bar is accordingly an element of the Lemon/endorsement test when a case involves public schools.
It is true that Town of Greece does not explicitly declare either that Allegheny is overruled or that the Court has entirely jettisoned the endorsement test. But Justices Scalia and Thomas have done so. See Elmbrook Sch. Dist. v. Doe, — U.S. -, 134 S.Ct. 2283, 2284, 189 L.Ed.2d 795 (2014) (Scalia, J., dissenting from the denial of certiorari) (“Town of Greece aban *601 doned the antiquated ‘endorsement test,’ which formed the basis for the decision below.”). In the short time since Town of Greece was decided, one of our sister circuits has — correctly, in my view — concluded that Town of Greece abrogated Allegheny. Tearpock-Martini v. Borough of Shickshinny, 756 F.3d 232, 238 (3d Cir.2014).
But the full Supreme Court has not done so yet. “If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.” Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). The Court subsequently reaffirmed this rule in an Establishment Clause case, and indeed, specifically a school-funding case. See Agostini, 521 U.S. at 237, 117 S.Ct. 1997 (quoting Rodriguez de Quijas, 490 U.S. at 484, 109 S.Ct. 1917). Therefore notwithstanding Town of Greece’s broad language regarding the test that properly governs the Establishment Clause, discussed infra, unless and until the Supreme Court explicitly holds that it has abandoned the Lemon /endorsement test, the lower courts are bound to continue applying that test in contexts where the Court has previously employed it, including Edwards footnote 4’s prohibition on examining history for public-school cases. Solely for this reason, the endorsement test controls this case.
Application of that test here leads inexorably to the conclusion that the decision of the Jefferson County Board of School Commissioners is permissible under the Establishment Clause. The facts are fully set forth in the lead opinion, and as that opinion explains, under the endorsement test we must view those facts from the perspective of a “reasonable observer,” a hypothetical third party who is not an actual participant in the litigation. This observer is a fictional person who is “more informed than the casual passerby,” Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 779, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) (O’Connor, J., concurring in part and concurring in the judgment), one who is “deemed aware of the history and context of the community and forum in which the religious display appears,” id. at 780, 115 S.Ct. 2440.[8] I agree with the lead opinion that no such reasonable observer would look at these facts and conclude the government was endorsing religion. The extent of government involvement in the facts of this case goes no further than the involvement already validated by the Supreme Court in Zelman, Mitchell, and Agostini. If the Court found no endorsement of religion there, *602 then there is no warrant for us to find any endorsement here.
C.
But I cannot agree with the lead opinion’s dismissing as irrelevant last year’s Supreme Court opinion in Town of Greece. There, in the context of a challenge to legislative prayer, the Supreme Court addressed the issue of what test governs an Establishment Clause challenge to government action. Town of Greece is apparently a major doctrinal shift regarding the Establishment Clause, declaring a two-pronged test for Establishment Clause cases, a test based upon the historical approach the Court had followed in Marsh, Van Orden, and Hosanna-Tabor, and adding the coercion principle it followed in Lee and Santa Fe.[9] First, “[t]he Establishment Clause must be interpreted ‘by reference to historical practices and understandings’ ... Any test the Court adopts must acknowledge a practice that was accepted by the Framers and has withstood the critical scrutiny of time and political change.” Town of Greece, 134 S.Ct. at 1819 (quoting Allegheny, 492 U.S. at 670, 109 S.Ct. 3086 (Kennedy, J., concurring in the judgment in part and dissenting in part)). Second, “[i]t is an elemental First Amendment principle that government may not coerce its citizens ‘to support or participate in any religion or its exercise.’ ” Id. at 1825 (plurality opinion) (quoting Allegheny, 492 U.S. at. 659, 109 S.Ct. 3086 (Kennedy, J.)).[10] When the Supreme Court signals a sea change in constitutional law, I do not believe that we can lightly set it aside in a case implicating the same constitutional provision. Therefore, while we must still apply the Lemon /endorsement test, Town of Greece should inform our analysis here.
1.
First, Town of Greece’s historical-inquiry test. “ ‘[T]he line we must draw between the permissible and the impermissible is one which accords with history and faithfully reflects the understanding of the Founding Fathers.’ ” Town of Greece, 134 S.Ct. at 1819 (quoting Sch. Dist. of Abington Twp. v. Schempp, 374 U.S. 203, 294, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring)) (brackets in the original). This test recognizes that our interpretation of the Establishment Clause must “comport[ ] with what history reveals was the contemporaneous understanding of its guarantees.” Lynch, 465 U.S. at 673, 104 S.Ct. 1355. In this case, the question would be whether the Framers would regard the Kingswood contract as an establishment of religion. Although footnote 4 of Justice Brennan’s opinion for the Court in Edwards claims that a histor *603 ical inquiry would not resolve this question, three dissenting Justices in McCreary apparently disagree, noting that the same First Congress that drafted the Establishment Clause in 1789 also reenacted as a federal statute a measure of the Continental Congress that explicitly linked publicly supported schools with the teaching of both religion and morality. See McCreary, 545 U.S. at 887, 125 S.Ct. 2722 (Scalia, J., dissenting) (“The [First] Congress also reenacted the Northwest Territory Ordinance of 1787, 1 Stat. 50, Article III of which provided: ‘Religion, morality, and knowledge, being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged.’ ”).[11] “[The Supreme] Court has often noted that actions taken by the First Congress are presumptively consistent with the Bill of Rights, and this principle has special force when it comes to the interpretation of the Establishment Clause.” Town of Greece, 134 S.Ct. at 1834 (Alito, J., concurring) (citations omitted). We would need to determine if the Framers would object to taxpayer money’s paying for secular education in a building with no religious imagery, merely because the corporate entity that owns the building happens to have a religious mission, or because some de minimis religious symbol or sentence is found on the organization’s non-classroom, non-instructional documents.
If the Board’s contract would be histori- ■ cally acceptable to the Framers, we would then be required to also ask if it passes muster under the coercion prong of Town of Greece. “The inquiry remains a fact-sensitive one that considers both the setting ... and the audience_” Id. at 1825 (plurality opinion).[12] Here, the only activities required by the school contained not even a scintilla of religious content or imagery, and the only building where the students could observe any religious object — though again, while attending a purely optional lecture that would be purely secular — could be visited only if the *604 student chose to do so and the student’s parents consented. The only other possible sources of coercion would be an innocuous biblical reference on a weekly feedback form or a Christian cross on an Easter letter. And we would evaluate it not from the vantage point of a parent or student, but instead of former employees who lost a paycheck, but never saw the offending stationery. Plaintiffs here were former employees, who never attended the chapel or received any letters as a consequence of. the School Board’s contract with Kings-wood.
2.
The Court in Town of Greece gave several indications that it intends to displace the endorsement test, foremost of which was that Justice Kennedy’s opinion for the Court went beyond Marsh to adopt his four-justice dissent from Allegheny. When the Supreme Court adopted the endorsement testin Allegheny as the general rule for the Establishment Clause, the Court added ip dictum that Marsh upheld legislative prayer because the sole prayer-giver, Reverend Robert Palmer, had removed all references to Jesus Christ, thus suggesting that sectarian prayers would violate the Establishment Clause. See Allegheny, 492 U.S. at 603, 109 S.Ct. 3086. Because many prayers at Greece’s town meetings contained explicitly Christian references, the Second Circuit held that Allegheny had modified Marsh, and invalidated the town’s legislative-prayer practice as an endorsement of Christianity. Galloway v. Town of Greece, 681 F.3d 20, 27, 80-83 (2d Cir.2012). In so doing, the Second Circuit agreed with the Fourth Circuit that, after Allegheny, the endorsement test was part of the rule governing legislative-prayer cases. See Joyner v. Forsyth Cnty., 653 F.3d 341, 347 (4th Cir.2011); accord Hinrichs v. Bosma, 440 F.3d 393, 399 (7th Cir.2006), vacated sub nom. on other grounds, Hinrichs v. Speaker of the House of Reps., 506 F.3d 584, 598-600 (7th Cir.2007). Greece’s petition for certiorari framed the issue before the Court as implicating the validity and reach of the endorsement test. See Petition for Writ of Certiorari at i, 9-13, 18-21, Town of Greece, 134 S. Ct. 1811 (No. 12-696). At the Supreme Court, the petitioner acknowledged that the Court could decide its case simply by reaffirming Marsh. Br. for Pet’r at 16-27, Town of Greece, 134 S.Ct. 1811 (No. 12-696). But the town went further, arguing at length that the Court should adopt a history-and-coercion approach and jettison the endorsement test. See id. at 27-50, 54-57. Various amicus briefs argued almost exclusively that the Court should repudiate the endorsement test. See, e.g., Br. of Indiana, Texas, and Twenty-One Additional States as Amici Curiae in Supp. of Pet’r at 3-36, Town of Greece, 134 S. Ct. 1811 (No. 12-696). The Solicitor General of the United States represented the Obama Administration in the case, and urged the Court to do the opposite, arguing that the Court should reverse the Second Circuit, but base its decision on Marsh alone. See Br. for the U.S. as Amicus Curiae at 9-30, Town of Greece, 134 S. Ct. 1811 (No. 12-696). The endorsement test was thus prominently at issue in Town of Greece.
The Court began its opinion by reversing the lower court based on Marsh, Town of Greece, 134 S.Ct. at 1815-19, and explicitly rejected Allegheny’s nonsectarian dictum, id. at 1821. But then the Court went further, explicitly holding that the Court did not “carv[e] out an exception,” id. at 1818, to the Establishment Clause for legislative prayer due to some anomalous “historical foundation,” id. at 1819. “Any test the Court adopts must acknowledge a practice that was accepted by the Framers and has withstood the critical scrutiny of time and political change.” Id. (emphasis added). The Court then took aim at the *605 endorsement test. “Four dissenting Justices disputed that endorsement could be the proper test, as it likely would condemn a host of traditional practices that recognize the role religion plays in our society.” Id. at 1821 (discussing Allegheny, 492 U.S. at 601, 109 S.Ct. 3086 (majority opinion); id. at 670-71, 109 S.Ct. 3086 (Kennedy, J.)). Town of Greece went beyond Marsh to hold that any Establishment Clause test must recognize historically accepted practices, see id. at 1819-24, and cited Allegheny ’s dissent, specifically the part rejecting the newly minted endorsement test on the ground that many historically accepted actions (such as a creche on public land) would not survive that test, id. at 1819 (citing Allegheny, 492 U.S. at 670, 109 S.Ct. 3086 (Kennedy, J.)). This is followed by the plurality’s adoption of the coercion test, id. at 1824-28 (plurality opinion of Kennedy, J.), where Town of Greece explicitly adopts the remainder of the Allegheny dissent, see id. at 1825 (quoting Allegheny, 492 U.S. at 659, 109 S.Ct. 3086 (Kennedy, J.)); id. at 1827 (quoting Allegheny, 492 U.S. at 670, 109 S.Ct. 3086 (Kennedy, J.)). The Court’s reasoning in Town of Greece cannot be reconciled with the endorsement test. As already noted, one of our sister courts has already held that the Supreme Court abrogated Allegheny in Town of Greece. See Tearpock-Martini, 756 F.3d at 238.[13]
III.
In conclusion, although it appears the Supreme Court has rejected the endorsement test in favor of the historically grounded coercion test, lower courts are bound to follow Supreme Court cases invoking the endorsement test until the Justices explicitly overrule Allegheny and its progeny. Therefore school-funding cases must be examined under the endorsement test. Applying that test here, I agree that no reasonable observer would regard the School Board’s action as an endorsement of religion. Because there is no Establishment Clause violation, Plaintiffs are not entitled to damages or attorneys’ fees.
I therefore concur in parts I — III and concur in the result.

. Town of Greece restated Marsh 's test, holding that a given practice might be coercive— and thus unconstitutional — if the prayers, as a pattern “over time,” "denigrate nonbelievers or religious minorities, threaten damnation, or preach conversion.” Town of Greece, 134 S.Ct. at 1823.

.A majority of the Court subsequently discussed how Agostini collapsed Lemon into a two-pronged inquiry. Mitchell v. Helms, 530 U.S. 793, 807-08, 120 S.Ct. 2530, 147 L.Ed.2d 660 (2000) (plurality opinion) (affirming that in Agostini “we therefore recast Lemon’s entanglement inquiry as simply one criterion relevant to determining a statute’s effect”); see also id. at 845, 120 S.Ct. 2530 (O’Connor, J., concurring in the judgment) (“We also concluded in Agostini ... that the specific criteria used to determine whether government aid has an impermissible effect had changed.”).

. This is consistent with the Court’s initial articulation of the endorsement test, which asked whether the state action had the "purpose or effect of ’endorsing’ religion,” Allegheny, 492 U.S. at 592, 109 S.Ct. 3086 (emphasis added), thus implicating the first two of Lemon 's three prongs.

. While three Justices once attempted to conjoin the endorsement and coercion tests, see *599 Lee, 505 U.S. at 604, 112 S.Ct. 2649 (Blackmun, J., concurring) (asserting that religious coercion "is an obvious indication that the government is endorsing ... religion), the Court has instead always maintained them as strictly distinct tests. Indeed, for the reasons explained infra, these tests must always be separate because they are irreconcilable.

. Some of our sister courts have consequently applied Justice Breyer’s "legal judgment” test for certain types of Establishment Clause cases, indicating those courts have concluded the "legal judgment” standard has displaced the endorsement test in those contexts. See, e.g., ACLU Neb. Found. v. City of Plattsmouth, 419 F.3d 772, 777-78 (8th Cir.2005) (en banc) (Ten Commandments); Myers v. Loudoun Cnty. Pub. Schs., 418 F.3d 395, 408 (4th Cir.2005) (Pledge of Allegiance). Yet another circuit applied both tests. See Trunk v. City of San Diego, 629 F.3d 1099, 1109, 1117-18 (9th Cir.2011) (federal war memorial with a Christian cross).

. We recently elaborated upon this ministerial exception, with an analysis that likewise focused on history. See Conlon v. InterVarsity Christian Fellowship/USA, 777 F.3d 829, 832-37 (6th Cir.2015).

. Several Justices on the Court, joined by various scholarly authorities, appear to reject the proposition found in this footnote in Edwards. See infra footnote 11 and accompanying text.

. Some of the sharpest criticisms of the endorsement test are directed against its "reasonable observer” or "objective observer,” even by Justices who supported the Court’s adoption of the test. For example, Justice Stevens wrote:
[The] reasonable observer is a legal fiction ... The ideal human Justice O’Connor describes knows and understands much more than meets the eye. Her "reasonable person” comes off as a well-schooled jurist, a being finer than the tort-law model. With respect, I think this enhanced tort-law standard is singularly out of place in the Establishment Clause context.
Pinette, 515 U.S. at 800 n. 5, 115 S.Ct. 2440 (Stevens, J., dissenting). Leading scholars— including a former Tenth Circuit judge who does not support the endorsement test — concur. See, e.g., Michael W. McConnell, Religious Freedom at a Crossroads, 59 U. Chi. L.Rev. 115, 148-51 (1992); cf. also Laurence H. Tribe, Constitutional Calculus: Equal Justice or Economic Efficiency?, 98 Harv. L.Rev. 592, 611 (1985).

. The first part of Town of Greece's test— history — is the majority opinion of the Court. The second part — coercion—is a three-Justice plurality, but is controlling on the lower courts, as it is narrower than the accompanying two-Justice concurring opinion. See Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.” (internal quotation and editing marks omitted)).

. Two Justices in the majority, Justices Sca-lia and Thomas, did not join this part of Justice Kennedy’s opinion, writing separately to agree that government may not coerce anyone to participate in religion, but that such unconstitutional coercion is "actual legal coercion” with “force of law and threat of penalty," which "was a hallmark of historical establishments of religion,” and therefore was already barred by the historical-inquiry test adopted in the majority opinion. Town of Greece, 134 S.Ct. at 1837 (Thomas, J., concurring in part and concurring in the judgment).

. Many scholarly authorities likewise appear to sharply disagree with Justice Brennan’s claim in that Edwards footnote that the rarity of public schools during the Founding era means that an examination of history does not illuminate whether, with the ubiquity of religious content in educational settings, the Framers would have concluded that governmental support would render such educational programs unconstitutional. See, e.g., Corinna Barrett Lain, God, Civic Virtue, and the American Way: Reconstructing Engel, 67 Stan. L.Rev. 479, 486 nn. 30-31 (2015) (collecting scholarly treatises); see also Steven D. Smith, Constitutional Divide: The Transformative Significance of the School Prayer Decisions, 38 Pepp. L.Rev. 945, 967 & nn. 140-41 (citing Noah Feldman, Divided by God (2005)); Joseph P. Viteritti, Choosing Equality: Religious Freedom and Educational Opportunity Under Constitutional Federalism, 15 Yale L. & Pol’y Rev. 113, 119-20 & n. 22, 186 (1996) (citing Bernard Bailyn, Education in the Forming of American Society (1960)); Gerard V. Bradley, Protecting Religious Liberty: Judicial and Legislative Responsibilities, 42 DePaul L.Rev. 253 (1992). Such a contention is especially problematic given that the only application of the Establishment Clause to the States is through the Fourteenth Amendment, Everson, 330 U.S. at 15, 67 S.Ct. 504, which was adopted in 1868 when public schools were common and religious instruction was pervasive in the typical curriculum, see Kyle Duncan, Secularism’s Laws: State Blaine Amendments and Religious Persecution, 72 Fordham L.Rev. 493, 502-06 (2003). However, since no inferior court can question the Supreme Court’s pronouncement on the matter, only the Supreme Court can revisit the factual accuracy of footnote 4 in Edwards.

. The plurality’s "fact-intensive” inquiry, Town of Greece, 134 S.Ct. at 1825, refers only to whether the plaintiff in a lawsuit faced the sort of coercion that the plurality said would transgress the constitutional line. There is no fact-specific inquiry as to which test a court is to apply; the histoiy-and-coercion test is set . forth as a test that should govern all Establishment Clause claims.

. For the reasons the lead opinion explores, our case here is readily distinguishable from the Seventh Circuit’s recent case of Doe v. Elmbrook School District, 687 F.3d 840 (7th Cir.2012) (en banc), cert. denied, - U.S. -, 134 S.Ct. 2283, 189 L.Ed.2d 795 (2014). The facts arising from that public school’s graduation ceremony are far removed from the facts of this case. See id. at 845-47. However, even if this case could not be distinguished from Elmbrook, Defendant here should still prevail because Elmbrook was wrongly decided. For the reasons explained in the principal dissent for three judges, Supreme Court precedent did not require invalidation of Elmbrook School District's graduation program, and instead the en banc opinion was an unwarranted expansion of Lee and Santa Fe. See id. at 861-69 (Ripple, J., joined by Easterbrook, C.J., and Posner, J., dissenting). Moreover, Elmbrook was decided before Town of Greece.