**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3876
_____

FRANCENE TEARPOCK-MARTINI,
                              Appellant

v.

BOROUGH OF SHICKSHINNY; JULE MOORE;
MICHAEL STEEBER; ROSALIE WHITEBREAD;
JAMES WIDO
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-12-cv-02223)
District Judge: Honorable James M. Munley
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 20, 2014

Before: CHAGARES, GREENAWAY, JR., and
VANASKIE, *Circuit Judges*

(Filed: June 23, 2014)

Barry H. Dyller, Esq.
Dyller Law Firm
88 North Franklin Street
Gettysburg House
Wilkes-Barre, PA 18701
        *Counsel for Appellant*

John J. Mahoney, Esq.
Siana, Bellwoar & McAndrew
941 Pottstown Pike
Suite 200
Chester Springs, PA 19425
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge*.

In 2008, Appellee Borough of Shickshinny ("Shickshinny") approved placement of a religious-themed sign on municipal property near the home of Appellant Francene Tearpock-Martini ("Tearpock-Martini"). In 2012, Tearpock-Martini brought this civil rights action, challenging the placement of the sign as a violation of the Establishment Clause of the First Amendment of the Constitution of the United States. At issue in this appeal is whether an Establishment Clause challenge under 42 U.S.C. § 1983 to a still-existing monument erected on municipal property is subject to a state-law statute of limitations. We hold that it is not. Accordingly, we will vacate the District Court's ruling that the Establishment Clause challenge advanced by

Tearpock-Martini is time-barred. With respect to her other claims—that the refusal of Shickshinny to allow her to erect her own nearby sign violated her rights to free speech and equal protection of the law—we conclude that Pennsylvania's statute of limitations does apply, and will affirm the District Court's dismissal of those claims on limitations grounds.

I.

Tearpock-Martini, a resident of Shickshinny, Pennsylvania, owns property situated at the intersection of South Main Street and Furnace Street.[1] In 2008, a local pastor sought to place a directional sign for his church near her property. Tearpock-Martini objected. At an August 2008 meeting, the Shickshinny Borough Council voted to approve the installation of the sign on the Borough's right of way bordering Tearpock-Martini's property.[2] On August 18, 2008, Shickshinny employees installed the sign, which reads: "Bible Baptist Church Welcomes You!" It has a directional arrow with "1 BLOCK" written on it, and depicts a gold cross and a white Bible.

---

[1] Our recitation of the factual background is derived from Tearpock-Martini's Amended Complaint. For purposes of this appeal, we accept as true all facts set forth therein, and draw all reasonable inferences from such allegations in favor of the complainant. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

[2] Appellees Jule Moore, Michael Steeber, Rosalie Whitebread, and James Wido are Borough Council members who voted to approve the sign.

3

To protest the placement of the sign, Tearpock-Martini installed, on her property directly in front of the church sign, a posting of her own, which read: "This Church Sign Violates My Rights As A Taxpayer & Property Owner. Residential Neighborhoods Are Not Zoned For Advertisement Signs!" Shickshinny, by way of a letter and also a verbal warning from its Code Enforcement Officer, told Tearpock-Martini that she could be charged with summary offenses if she did not remove her sign. Tearpock-Martini evidently removed her sign in response to these threats.[3] At some unspecified time thereafter, the town reinforced the installation of the church sign using heavy equipment and poured concrete.

In November 2012, Tearpock-Martini filed a civil rights complaint pursuant to 42 U.S.C. § 1983. She later filed a three-count Amended Complaint. Count One asserts an Equal Protection claim based upon the refusal to allow her to erect her own sign; Count Two asserts that Appellees violated, and continue to violate, the Establishment Clause by authorizing the installation and ongoing presence of the church sign; and Count Three avers that Appellees violated the First Amendment by threatening to prosecute Tearpock-Martini for installation of her own sign. She seeks injunctive relief consisting of removal of the church sign, as well as damages.

Appellees moved to dismiss the Amended Complaint based on, among other things, Pennsylvania's two-year statute of limitations for tort claims. In a Memorandum and

---

[3] Although the Amended Complaint itself is unclear on this point, Shickshinny seems to concede as much in its briefing. Appellees' Br. at 19.

4

Order entered August 19, 2013, the District Court found that Tearpock-Martini's claims were time-barred, and granted the motion to dismiss. Tearpock-Martini filed a timely notice of appeal.

## II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291. Our review of a dismissal under Rule 12(b)(6) is de novo. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009).

## III.

The Establishment Clause, which states that "Congress shall make no law respecting an establishment of religion[,]" U.S. Const. amend. I, prevents any branch of federal, state, or municipal government from "act[ing] with the ostensible and predominant purpose of advancing religion . . . ." *McCreary Cnty., Ky. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005). Although the precise contours of that command have historically resisted definition even by our highest Court,[4] it is

---

[4] *See, e.g.*, *Van Orden v. Perry*, 545 U.S. 677, 692 (2005) (Scalia, J., concurring) (characterizing the plurality opinion as "accurately reflect[ing] our current Establishment Clause jurisprudence—or at least the Establishment Clause jurisprudence we currently apply some of the time."); *Utah Highway Patrol Ass'n v. Am. Atheists, Inc.*, 132 S. Ct. 12, 17–19 (2011) (Thomas, J., dissenting from denial of certiorari) (noting that the display on government property of a crèche,

5

undisputed that religious displays erected by the State, whether enduring or only temporary, may sometimes stand in violation of the Constitution. *See, e.g.*, *id.* at 881 (concluding that courthouse display of the Ten Commandments violated the Establishment Clause).

Section 1 of the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, is the vehicle by which an individual may sue government officials in tort for violations of constitutional rights, including those arising under the Establishment Clause.[5] Although federal law provides no

---

menorah, the Ten Commandments, or a cross "violates the Establishment Clause, except when it doesn't.").

[5] In pertinent part, the statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

statute of limitations for actions brought under § 1983, state law may provide a limitations period "if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–67 (1985) (citing 42 U.S.C. § 1988), *superseded by statute on other grounds,* 28 U.S.C. § 1658(a); *see also Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Because the Supreme Court has clarified that "all § 1983 claims should be characterized for statute of limitations purposes as actions to recover damages for injuries to the person[,]" *Springfield Twp. Sch. Dist. v. Knoll*, 471 U.S. 288, 289 (1985), the ostensibly applicable term here is Pennsylvania's two-year limitations period applicable to tort claims, *see* 42 Pa. Cons. Stat. Ann. § 5524(7).[6] The date of

---

42 U.S.C. § 1983.

[6] In pertinent part, the statute reads:

> The following actions and proceedings must be commenced within two years:

> (7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

the claim's accrual, however, continues to be governed by federal law, *see Wallace v. Kato*, 549 U.S. 384, 388 (2007), although state law generally governs tolling and its effects, *see Chardon v. Soto*, 462 U.S. 650, 655 (1983).

Tearpock-Martini does not dispute that more than two years elapsed between the installation of the church sign by Appellees and the commencement of her lawsuit.[7]  Instead, she invokes the continuing-violation doctrine, which "is an 'equitable exception to the timely filing requirement.'" *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)).  In brief, the rule provides that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991).  The doctrine's focus "is on affirmative acts of the defendants." *Cowell*, 263 F.3d at 293.

---

42 Pa. Cons. Stat. Ann. § 5524(7).

[7] Nor does she allege or argue that Appellees' reinstallation of the church sign occurred within two years of the complaint.  And although the Amended Complaint states that Appellees "repeatedly ratify their installation and maintenance of the sign at Shickshinny Borough meetings[,]" (App. 24), Tearpock-Martini does not explain the import of this conclusory statement.

The reach of this doctrine is understandably narrow. We have often applied it in employment discrimination cases, where only in retrospect will a plaintiff recognize that seemingly unconnected incidents were, in fact, part and parcel of a larger discriminatory pattern. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165–67 (3d Cir. 2013) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Under such circumstances, equity demands that so long as the most recent offensive utterance or adverse action occurred within the limitations period, the entire scope of that continuing violation may be considered. *Id.* We have cautioned, however, that equitable relief from the statutory limitations period is appropriate only where the alleged violation is "'occasioned by continual unlawful acts, not continual ill effects from an original violation.'" *Cowell*, 263 F.3d at 293 (quoting *Ocean Acres Ltd. v. Dare Cnty. Bd. of Health*, 707 F.2d 103, 106 (4th Cir. 1983)).[8]

The only cases lending credence to Tearpock-Martini's theory that a monument which contravenes the Establishment Clause is a continuing *act* giving rise to a newly accrued right on each day of its existence, as opposed to a continuing *effect* of the original installation, come from the Seventh Circuit. In *Gonzales v. North Township of Lake County*, 800 F. Supp. 676, 684 (N.D. Ind. 1992), the district court considered the

---

[8] Were it not for this sensible limitation, the exception might swallow the rule. A financial harm, physical trauma, or injury to reputation, for instance, will often follow a plaintiff long after the unlawful act itself. As a corollary, we have held that a government official's refusal to undo or correct such harm is not an affirmative act for purposes of establishing a continuing violation. *Cowell*, 263 F.3d at 293.

9

constitutionality of a monument installed in 1955 and challenged 30 years later. The court, despite ultimately finding no Establishment Clause violation, declined to apply the statute of limitations, explaining that "as each day there is a violation, each day [the plaintiff's] cause of action accrues." *Id.* On appeal, the Seventh Circuit reversed, concluding, without disturbing the district court's limitations ruling, that the monument did violate the Establishment Clause. *See Gonzales v. N. Twp. of Lake Cnty.*, 4 F.3d 1412 (7th Cir. 1993).

Years later, in *Pitts v. City of Kankakee*, 267 F.3d 592 (7th Cir. 2001), the Seventh Circuit revisited its *Gonzales* opinion in dicta. The *Pitts* plaintiffs argued that the city had violated their First Amendment rights by placing defamatory signs on their property in retaliation for certain protected speech. The panel rejected the plaintiffs' argument that the continuing-violation doctrine applied, in part by distinguishing the plaintiffs' claims from an Establishment Clause violation:

> The First Amendment's command that there be no establishment of religion stands on a different footing from a private individual's interest in avoiding defamation. All citizens have an interest in preventing government from sponsoring one particular religion, however worthy the tenets of that faith may be. Indeed, it might not be too much to say that an important part of the reason why the United States has been

10

fortunate enough to escape most of the religious conflict that has plagued other parts of the world is that the Constitution itself demands that the government maintain a position of absolute neutrality among religions. Potential violations of this principle may not be obvious, however, to those who share a common background. In a predominantly Christian community, it may take a Buddhist, or a [Muslim], or a Jew, or an atheist, to call to the authorities' attention a possible violation of the Establishment Clause. The rights of such citizens do not expire simply because a monument has been comfortably unchallenged for twenty years, or fifty years, or a hundred years. Each day, as our own opinion in *Gonzales* implicitly recognized, brings a new duty on the government's part, and a corresponding new right to seek vindication of the constitutional right in question.

*Id.* at 596.

We take no issue with the Seventh Circuit's emphatic pronouncement that Establishment Clause claims ultimately

11

are not subject to dismissal under a state statute of limitations. But nothing in the reasoning of either *Gonzales* or *Pitts* suggests why the continuing-violation doctrine provides a coherent basis for that conclusion. Many allegedly unconstitutional state actions set in motion a lasting consequence which, to an injured plaintiff, might continue to invite vindication. But as we recognized in *Cowell*, to elide the distinction between *affirmative acts* and *effects* would be to extend indefinitely the date of accrual for all constitutional claims predicated upon state takings, denial of business permits, zoning decisions, and any other manner of state action carrying long-term repercussions.

Instead we find ourselves in agreement with the simple logic advanced by Appellees: (1) the last affirmative act taken by Shickshinny was the physical installation of the sign itself, which occurred outside the limitations period; (2) the continued presence of the sign is merely an effect of that action; (3) the continuing-violation doctrine does not apply. Like the District Court, which concluded that Appellees "ha[ve] committed no acts within the two years of the filing of plaintiff's complaint," (App. 12), we too conclude that the continuing-violation doctrine does not apply on these facts.

IV.

When an issue is properly before us, we are "not limited to the particular legal theories advanced by the parties, but rather retain[] the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) (citing *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990)); *see also Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 413 n.3 (3d Cir. 2012). Here, we find Pennsylvania's

statute of limitations inapplicable to Tearpock-Martini's claim for a reason other than the one she offers.

As explained by the Supreme Court in *Wilson*, 471 U.S. at 267, and as we touched upon earlier, federal law incorporates state law for purposes of certain interstitial "rules of decision applicable to civil rights claims . . . ." Such incorporation by reference, however, is not automatic, and instead requires a three-step analysis:

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." [42 U.S.C. § 1988(a).[9]] If no suitable federal

---

[9] In pertinent part, the statute reads:

> The jurisdiction in civil and criminal matters conferred on the district courts . . . for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses

13

> rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum state. *Ibid.* A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States." *Ibid.*

*Burnett v. Grattan*, 468 U.S. 42, 47–48 (1984). The first two steps are not in dispute: because § 1983 lacks a limitations period, we turn to Pennsylvania's statutory rule. The third step, upon which we now focus, compels us to apply that rule

> against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

42 U.S.C. § 1988(a).

14

unless it would be "inconsistent with federal law or policy to do so." *Wilson*, 471 U.S. at 266–67.

We thus consider the significance of the federal rights implicated by an Establishment Clause claim. Perhaps the most readily apparent factor on this point is the Clause's standing in the first line of the Bill of Rights. *See* U.S. Const. amend. I. The Supreme Court, too, despite a fractious debate over the scope of the substantive rights conveyed, has reiterated the importance of the Clause time and again: "It is settled law that no government official in this Nation may violate these fundamental constitutional rights regarding matters of conscience." *Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 590 (1989), *abrogated on other grounds by Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014); *Town of Greece*, 134 S. Ct. at 1825 (characterizing Establishment Clause rights as "elemental").

Many constitutional rights which *are* traditionally subject to state limitations periods, of course, are of debatably equal or even greater significance. But what further distinguishes Tearpock-Martini's claim, and Establishment Clause claims in general, is that the traditional rationales justifying a limitations period—"to protect defendants against stale or unduly delayed claims," "facilitat[e] the administration of claims," and "promot[e] judicial efficiency," *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008)—simply have no persuasive force in this context. Tearpock-Martini's challenge is to a still-existing monument that communicates anew an allegedly unconstitutional endorsement of religion by the government each time it is viewed. Strict application of the statutory limitations period both serves no salutary purpose and

15

threatens to immunize indefinitely the presence of an allegedly unconstitutional display.

Our analysis is bolstered by the fact that we are aware of no opinion, aside from that issued by the District Court below, to have held that an Establishment Clause violation predicated on a still-existing display or practice was time-barred. This cannot be for lack of opportunity: high-profile challenges to the long-standing public display of religious monuments have been routine in recent years. Although such claims sometimes fail on the merits or for other procedural reasons, none have been dismissed on limitations grounds. *See, e.g.*, *Van Orden v. Perry*, 545 U.S. 677 (2005) (display of Ten Commandments challenged 40 years after installation); *Card v. City of Everett*, 520 F.3d 1009 (9th Cir. 2008) (monument challenged more than 30 years after installation); *Weinbaum v. City of Las Cruces*, 541 F.3d 1017 (10th Cir. 2008) (city seal challenged after over 40 years in use); *Freedom from Religion Found., Inc. v. City of Marshfield*, 203 F.3d 487 (7th Cir. 2000) (statue in Wisconsin park challenged after 39 years on site); *Harris v. City of Zion, Lake Cnty.*, 927 F.2d 1401 (7th Cir. 1991) (city seal challenged after 89 years in use); *Friedman v. Bd. of Cnty. Comm'rs*, 781 F.2d 777 (10th Cir. 1985) (en banc) (county seal challenged after 60 years in use). Cases involving ongoing practices, too, have been brought long after the initiation of the practice at issue without implicating a limitations period. *See, e.g.*, *Town of Greece*, 134 S. Ct. at 1816 (prayer at town meeting challenged after 9 years of monthly occurrences). And our own jurisprudence, which addresses the question only cursorily, implies that such claims are not subject to dismissal under the statute of limitations. *See, e.g.*, *Freethought Soc'y of Greater Phila. v. Chester*

*Cnty.*, 334 F.3d 247, 255 n.3 (3d Cir. 2003) ("[W]e do not believe that the defendants have demonstrated that [the plaintiff] waived her right to bring this action (or that the statute of limitations has expired) because she noticed the plaque in the 1960s but did not bring an action until 2001.").[10]

In sum, the significance of the constitutional interests at play, the minimal interests advanced by application of a limitations period, and the long-standing apparent exemption of Establishment Clause claims from such defenses convince us that it would be "inconsistent with federal law or policy," *Wilson*, 471 U.S. at 266–67, to apply Pennsylvania's limitations period to Tearpock-Martini's Establishment Clause claim.[11]  Accordingly, we will vacate the dismissal of Count Two of the Amended Complaint.

---

[10] Although academic literature on the question presented is all but nonexistent, Erwin Chemerinsky, a noted constitutional scholar, agrees that the issue is not a matter of tolling—instead, the better view is that "there is no statute of limitations for Establishment Clause claims."  Erwin Chemerinsky, *Why Justice Breyer Was Wrong in Van Orden v. Perry*, 14 Wm. & Mary Bill Rts. J. 1, 14 (2005).

[11] It should be plain from this analysis that our logic and holding extend only to Establishment Clause claims challenging a still-existing display.  Although the question is not before us, we expect that Establishment Clause claims predicated on discrete incidents would remain subject to any applicable state-law limitations period. *See, e.g.*, *Weinstein v. U.S. Air Force*, 468 F. Supp. 2d 1366, 1375 (D.N.M. 2006) (dismissing Establishment Clause claim predicated on single

Appellees ask that in the alternative, we consider whether Tearpock-Martini's Establishment Clause claim fails to state a claim upon which relief can be granted. Because the District Court has not yet passed on that question, we express no opinion on the matter and leave it for resolution upon remand.

V.

Counts One and Three of the Amended Complaint allege that Shickshinny violated the Equal Protection Clause and the Free Speech Clause, respectively, when it prohibited Tearpock-Martini from installing her own sign in protest of the church sign. As noted above, Tearpock-Martini does not allege that this incident occurred within two years of the filing of her lawsuit. Nor does she specifically argue in her briefing that the limitations period for these claims, too, should be tolled by the continuing-violation doctrine or for any other reason.

We agree with the District Court that these claims, which also arise under § 1983, are barred by Pennsylvania's two-year statute of limitations. *See, e.g.*, *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78–79 (3d Cir. 1989) (affirming dismissal of equal protection claims under Pennsylvania statute of limitations); *O'Connor v. City of Newark*, 440 F.3d 125, 129 (3d Cir. 2006) (affirming dismissal of free speech claim under Pennsylvania statute of limitations). Accordingly, we will affirm the District Court's order of

_____

incident of unwelcome "proselytizing" under New Mexico's six-year limitations period).

18

August 19, 2013 insofar as it dismisses Counts One and Three of the Amended Complaint.

## VI.

For the foregoing reasons, we will affirm in part and vacate in part the District Court's ruling, and remand for further proceedings consistent with this opinion.