NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3872
_____

DAVID F. GOULD, III, ESQUIRE,

Appellant

v.

COUNCIL OF BRISTOL BOROUGH;
WILLIAM SALERNO, ESQUIRE;
BRISTOL BOROUGH ZONING HEARING BOARD;
BARBARA KIRK, ESQUIRE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-13-cv-04016)
Honorable Luis Felipe Restrepo, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
June 19, 2015

BEFORE:  AMBRO, FUENTES, and GREENBERG, Circuit Judges

(Filed: July 7, 2015)
_____

OPINION*
_____

GREENBERG, Circuit Judge.
_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
 does not constitute binding precedent.

## I.  INTRODUCTION

Attorney David F. Gould, III, brought this action on his own behalf, asserting various claims under 42 U.S.C. § 1983 and other civil rights act provisions premised on defendants' alleged misconduct in denying his application for certain zoning variances and subsequently defending their conduct against Gould's challenges in the Pennsylvania state courts.  In two orders, the District Court dismissed Gould's claims pursuant to Fed. R. Civ. P. 12(b)(6) because the statute of limitations barred the action and the complaint did not state an actionable claim.  The statute of limitations issue centers on the continuing violations doctrine, which the Court found to be inapplicable.  We agree with the Court that the continuing violations doctrine did not toll the running of the statute of limitations:  that the action was untimely when Gould started it more than two years after his cause of action accrued.  Consequently, we will affirm the orders of dismissal.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Gould brought this case against the Bristol Borough Council, its solicitor, William Salerno, the Bristol Borough Zoning Hearing Board, and its solicitor, Barbara Kirk, following a long dispute between Gould and defendants regarding Gould's attempt to develop land in Bristol Borough, Pennsylvania.  Though we do not doubt that there are disputes of fact in this case, in view of its procedural posture we draw the following facts from Gould's amended complaint, exhibits attached to that complaint, and public records, and treat them as true but only for purposes of this litigation.

2

Gould owns property in the Town Center District of Bristol Borough on which three dilapidated stone row houses, apparently being a single structure, are situated. According to Gould, certain council members and individuals connected to Bristol's government "view the property in a proprietary manner, believing it should be available to them or their cronies" for redevelopment. App. at 146a. Around the time Gould acquired the property, defendants filed an eminent domain action in the Court of Common Pleas of Bucks County in the name of Bristol Borough, seeking to take title to the property with the intention of razing the structure on it and selling the property to someone of their choosing for redevelopment. The eminent domain action deprived Gould of the use of the property while it was pending. Gould filed objections to the taking, which the court sustained on August 20, 2007.[1] Over the next year, defendants undertook other efforts, including issuing citations and assessing fines seeking to require Gould either to demolish the property or make certain repairs to it.

In response to this pressure, Gould developed a plan that he believed to be authorized by a recently enacted zoning ordinance, the 1G Use Ordinance, which for the first time allowed mixed commercial-residential uses in the Town Center. The plan contemplated replacing the existing building with a new building that would include one or two commercial units downstairs and two or three residential units upstairs. Salerno indicated to Gould that the 1G Use Ordinance authorized the proposed plan, although Gould would have to obtain minor zoning variances to allow the proposed construction.

---

[1] The amended complaint indicates that the common pleas court found for Gould on August 20, 2008, app. at 148a, but we believe that the correct date was August 20, 2007.

3

Gould applied for the necessary variances, but, after initially seeming to be agreeable to the plan, the Zoning Hearing Board denied the application for the variances on February 17, 2010. According to Gould, defendants knew that they did not have a proper basis for denying the application but nevertheless agreed to have Kirk concoct false grounds for the denial. On April 5, 2010, the board issued a written decision containing what Gould contends was "a deliberate and fraudulent construction" of Bristol's zoning ordinances. Id. at 156a. Gould makes the particular allegation that, despite language in the 1G Use Ordinance indicating that it authorized multiple residential units within a mixed-use structure, the decision wrongfully interpreted the ordinance as permitting only a single residential unit and a single commercial unit within such a structure. Gould asserts that the board in reviewing his application therefore applied the strict standard used for review for use variances rather than the more lenient standard for the consideration of requests for dimensional variances that should have been applied.

Gould appealed the board's decision to the Court of Common Pleas of Bucks County. In that action, defendants argued that the zoning decision was correct, but Gould contends that, in doing so, they misrepresented to the court the content of the Bristol zoning ordinances. Eventually, the court affirmed the board's denial of the requested variances and filed an opinion to that effect on March 9, 2011. In the opinion, the court concluded that the board misinterpreted the 1G Use Ordinance by construing it as being applicable to only a single residential unit within a mixed-use structure but nevertheless

4

held that the board correctly treated Gould's application as seeking use variances rather than dimensional variances.

Gould appealed the court's decision, but, according to him, "[t]he succeeding courts in the Pennsylvania judicial system adopted and acted on the poisoned fruit obtained by Defendants' fraud." Id. at 165a. First, the Pennsylvania Commonwealth Court affirmed the common pleas court's order on August 24, 2011. Then, Gould filed a petition for allowance of appeal with the Pennsylvania Supreme Court. Initially, defendants filed "no answer" letters to Gould's petition, to which Gould responded in letters to Salerno and Kirk asserting that they owed an ethical duty to the court to correct what he regarded were the false statements of law they had made to the common pleas court and demanding that they do so. After Salerno and Kirk replied that there was no error to correct, Gould filed a petition with the Pennsylvania Supreme Court claiming that there had been an uncorrected fraud on the courts. In response, defendants submitted filings denying that they engaged in any fraud affecting the outcome of the common pleas court proceedings. On July 9, 2012, the Pennsylvania Supreme Court denied Gould's petition for allowance of appeal.

On July 8, 2013, Gould filed the present suit in the District Court asserting claims under 42 U.S.C. § 1983 and other civil rights law provisions for violations of and conspiracy to violate his rights to procedural due process, substantive due process, equal protection, and freedom from takings without just compensation. Defendants moved to dismiss, and on January 27, 2014, the District Court dismissed the complaint without prejudice, relying on both the statute of limitations and the insufficiency of the complaint.

5

Gould subsequently filed an amended complaint asserting only 42 U.S.C. §§ 1983 and 1988 claims and thereby abandoning the claims he had made under other sections of the civil rights laws. See United States ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 516 (3d Cir. 2007).[2] Defendants filed a second motion to dismiss, which the District Court granted on August 11, 2014, based on both the statute of limitations and the merits. Gould then filed a notice of appeal to this Court from both orders of dismissal.

## III.  STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over Gould's § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review on an appeal from an order dismissing a complaint as untimely under the statute of limitations, which is the basis for our decision on this appeal. Pension Trust Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc., 730 F.3d 263, 268 (3d Cir. 2013). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)). We must accept the factual allegations in the complaint as true and draw all reasonable inferences from the complaint in the plaintiff's favor. Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. of Am., Inc., 762

---

[2] Even if the claims had been restated under the original sections in an amended form, our result would not be different.

F.3d 332, 334 (3d Cir. 2014). But in our determination, in addition to the complaint itself, we may consider exhibits attached to the complaint, matters of public record, and undisputedly authentic documents upon which the plaintiff rests his claims. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

Gould seeks to hold defendants liable under § 1983 for allegedly conspiring to violate and for violating his constitutional rights to procedural due process, substantive due process, and equal protection of the law.[3] Each of Gould's claims rests on an alleged scheme by which defendants misapplied Bristol's zoning ordinances to deny his requested variances and then defended this denial by misrepresenting the content of the ordinances to the court of common pleas. We, however, need not address the merits of Gould's claims, as we conclude that the statute of limitations bars them.

Although the statute of limitations is an affirmative defense, a defendant can raise the defense in a motion to dismiss if the plaintiff's untimeliness in bringing the action appears on the face of the complaint. Pension Trust Fund, 730 F.3d at 271; W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 105 n.13 (3d Cir. 2010). As with motions to dismiss generally, in considering a statute of limitations defense, we may consider not only the allegations in the complaint but also exhibits attached to the

---

[3] Gould also asserts a takings claim, but his brief includes only a single sentence in support of this claim and does not cite any legal authority. Appellant's br. at 64. We therefore consider the claim waived. See Free Speech Coal., Inc. v. Att'y Gen. of U.S., 677 F.3d 519, 545 (3d Cir. 2012).

complaint and matters of public record. Schmidt v. Skolas, 770 F.3d 241, 249-50 (3d Cir. 2014); Pension Trust Fund, 730 F.3d at 271.

Gould in his brief does not challenge the applicability to his § 1983 claims of a two-year statute of limitations and he could not reasonably do so. See Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003); Kost v. Kozakiewicz, 1 F.3d 176, 189-90 (3d Cir. 1993). An action under § 1983 accrues "when the plaintiff knew or should have known of the injury upon which the action is based." Montanez v. Sec'y Pa. Dep't of Corr., 773 F.3d 472, 480 (3d Cir. 2014) (quoting Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009)) (internal quotation marks omitted). Gould initiated this suit on July 8, 2013, and he therefore must show that his action accrued on or after July 8, 2011. Yet Gould's awareness of defendants' alleged misapplication of the zoning ordinances and misrepresentation of the content of these ordinances to the court of common pleas preceded March 9, 2011, when that court filed its opinion affirming the Zoning Hearing Board's denial of the requested variances.

Gould attempts to avoid the limitations bar by invoking the continuing violations doctrine. This doctrine creates a "narrow" and "equitable exception to the timely filing requirement." Tearpock-Martini v. Borough of Shickshinny, 756 F.3d 232, 236 (3d Cir. 2014) (quoting Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001)) (internal quotation marks omitted). Under the doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." Montanez, 773 F.3d at 481 (quoting Cowell, 263 F.3d at 292). That is, "the court will grant relief for the earlier related acts that

8

would otherwise be time barred." Cowell, 213 F.3d at 292. The doctrine, the effect of which we note litigants frequently overread, focuses, however, solely on "continual unlawful acts, not continual ill effects from an original violation." Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 423 (3d Cir. 2005) (quoting Cowell, 263 F.3d at 293). Only defendants' "affirmative acts" count. Tearpock-Martini, 756 F.3d at 236 (quoting Cowell, 263 F.3d at 293). "[A] government official's refusal to undo or correct [a] harm [caused by the official's unlawful conduct] is not an affirmative act for purposes of establishing a continuing violation." Id. at 236 n.8.

In Cowell, for example, we refused to apply the continuing violations doctrine where the plaintiffs brought a civil rights action outside the limitations period when measured from the time that the municipal defendants imposed allegedly unconstitutional liens on the property even though the action would have been timely if measured from the time during which the defendants allowed the liens to remain on the property. 263 F.3d at 293. We explained: "The mere existence of the liens does not amount to a continuing violation. Neither was the Township's refusal to remove the lien an affirmative act of a continuing violation." Id. Similarly, in Tearpock-Martini, we rejected the doctrine's application based on the continued presence of a sign the defendants had installed that allegedly violated the Establishment Clause. 756 F.3d at 237.

In an effort to show that there were affirmative acts within the limitations period, Gould points to the Pennsylvania Supreme Court filings in which defendants denied engaging in any fraud affecting the outcome of the lower court proceedings. As the

9

foregoing discussion illustrates, however, such refusals by defendants to correct the alleged ongoing harm of their misconduct do not constitute affirmative acts for purposes of the continuing violations doctrine. See Tearpock-Martini, 756 F.3d at 236 n.8; Cowell, 263 F.3d at 293.

Notwithstanding the well-established law to which we have referred, Gould contends that defendants' failure to act is a sufficient basis for the continuing violation doctrine to apply because defendant solicitors had affirmative ethical obligations to correct what he contends were patent errors in the judicial proceedings based on their misrepresentation of the local ordinance. But even assuming that the circumstances of this case were such that the solicitors had that ethical duty, this case is not distinguishable from cases in which we refused to apply the continuing violations doctrine.[4] For instance, we concluded in Tearpock-Martini that the continued presence of an allegedly unconstitutional sign did not satisfy the doctrine, even though we acknowledged later in the opinion that the defendants had an ongoing duty under the Establishment Clause to remove constitutionally offensive signs. See 756 F.3d at 237, 239; see also Weis-Buy Servs., 411 F.3d at 423 (holding that, notwithstanding existence of ongoing trust obligations, the continuing violations doctrine did not rescue plaintiffs' claim for breach of fiduciary duties). If we applied the continuing violations doctrine whenever a

_____

[4] We are not suggesting that we believe that either Salerno or Kirk acted in an unethical way. Rather, we are dealing with Gould's allegations. We also point out that it would be quite remarkable to hold that an attorney had an ethical duty to correct a misrepresentation of law to a court with respect to the meaning of an ordinance, as distinguished from a factual misrepresentation, such that the attorney's failure to make the correction could result in the tolling of a statute of limitations. After all, the court in cases with disputes as to the meaning of laws and ordinances will decide what they mean.

defendant had a duty to correct prior misconduct, "the exception might swallow the rule." Tearpock-Martini, 756 F.3d at 236 n.8.

Gould also identifies the affirmance by the Pennsylvania Commonwealth Court and the denial of allowance of appeal by the Pennsylvania Supreme Court as part of a continuing violation that delayed the accrual of his claims. Yet these adverse appellate decisions do not reflect "continual unlawful acts" by defendants but rather "continual ill effects" of their alleged misconduct before the court of common pleas. Montanez, 773 F.3d at 481 (quoting Weis-Buy Servs., 411 F.3d at 423). As the amended complaint states, "The succeeding courts in the Pennsylvania judicial system adopted and acted on the poisoned fruit obtained by Defendants' fraud." App. at 165a. Contrary to Gould's assertion, he did not need to complete his appeal through the Pennsylvania judicial system before his § 1983 claims would accrue. Cf. Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1292 n.12 (3d Cir.) ("A claim is 'final' [for ripeness purposes] after the zoning hearing board has rendered a decision. Finality does not require state court review of the board's decision."). Gould contends that considering the limitations period to be running while his state court appeals were still pending would impede his right to that appellate process. We reject this argument because there was nothing preventing him from pursuing the District Court and state court proceedings simultaneously. Cf. Weis-Buy Servs., 411 F.3d at 423-24 (rejecting plaintiffs' argument that their claim against defendant did not accrue until they had exhausted their remedies against another party because plaintiffs could have brought separate actions simultaneously); Sameric Corp. of Del. v. City of Phila., 142 F.3d 582, 600 (3d Cir. 1998) (holding that plaintiff's

11

diligence in objecting to land-use decision in state court did not toll statute of limitations under continuing violations doctrine as to separate due process claim). Hence, Gould's claims were untimely.

## V. CONCLUSION

For the foregoing reasons, we will affirm the District Court's orders of dismissal of Gould's original complaint and amended complaint, respectively entered on January 27, 2014, and August 11, 2014.