**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1328
_____

RICARDO NOBLE,

Appellant

v.

JOHN E. WETZEL, Secretary of PA D.O.C.; ROBERT GILMORE, SCI Greene
Superintendent; MARIA BALESTRIERI, Greene Prison Counselor; STEVE
LONGSTRETH, SCI Greene Prison Counselor; MICHAEL STELLA, SCI Greene Prison
Counselor; SETH ERICKSON, SCI Greene Prison Counselor
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 2:18-cv-01160)
District Judge: Honorable Marilyn J. Horan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 2, 2022

Before: AMBRO, KRAUSE, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: November 4, 2022)

_____

OPINION[*]
_____

**PER CURIAM**

Pro se appellant Ricardo Noble appeals from the District Court's dismissal of several of his claims and its grant of summary judgment in favor of the remaining defendants in an action Noble brought pursuant to 42 U.S.C. § 1983.  For the reasons that follow, we will affirm the District Court's judgment.

I.

Noble is an adherent of the "Nation of Gods and Earth" ("NGE"), also referred to as "the 5%."[1]  See Am. Compl. at p. 4.  He is incarcerated based on a 1992 conviction for second-degree murder and is serving a sentence of 40 years to life imprisonment.  Between roughly 2001 and 2013, and then again since 2014, Noble has been housed in SCI-Greene's Restricted Housing Unit ("RHU").

In 2013, Noble was released from the RHU and housed in the general population of SCI-Greene.  Then in August 2014, Noble violently assaulted a unit manager, striking him repeatedly in the head and neck with a combination lock attached to a sock; Noble denies some facts about the incident.  He was sentenced to 450 days in disciplinary

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] Because we write primarily for the parties, we will recite only the facts necessary for our discussion.  These facts are undisputed unless otherwise noted.

custody as a result of the attack. In October 2014, staff recommended that Noble be placed on the Restrictive Release List ("RRL")[2] because of five prior assaults against prison staff and inmates, where the victims all required hospital treatment; Noble denies the facts of these incidents. Staff believed assaults in 2003 and 2006 to be gang-related, which Noble also denies.

In 2018, Noble received a copy of a sentencing memorandum prepared by the Commonwealth, which indicated that he had been classified as a member of a Security Threat Group ("STG"). He submitted a grievance to the Pennsylvania Department of Corrections ("DOC") later that year claiming that his STG classification had been falsely made solely because he is an NGE adherent.[3] Stephen Longstreth, the manager of SCI-Greene's RHU, denied the grievance, explaining that the DOC had properly documented Noble's history of violence against inmates and staff. Robert Gilmore, the superintendent of SCI-Greene, upheld the denial.

In August 2018, Noble filed a lawsuit in the District Court, challenging his STG classification, the denial of NGE-related materials in prison, and his commitment in the RHU. He named Longstreth and Gilmore as defendants, as well as John Wetzel, the Secretary of the DOC, and three prison counselors, Michael Stella, Seth Erickson, and

---

[2] The RRL is a list of prisoners who are restricted from being released into the general population of the prison for an indefinite period of time.

[3] According to an affidavit by a DOC employee regarding STGs, prisons track inmates' STG status to monitor groups that are known to cause disturbances. STG status is not limited to major gangs. NGE adherents were not recognized as an STG at the time of the affidavit, and as of 2021, Noble was categorized as a suspected member of an STG.

3

Maria Balestieri.[4]  He brought the following claims pursuant to § 1983: (1) a conditions

of confinement claim under the Eighth Amendment; (2) a conditions of confinement

claim under the Fourteenth Amendment; (3) a claim under the Equal Protection Clause;

(4) claims under the First Amendment and the Religious Land Use and Institutionalized

Persons Act of 2000 ("RLUIPA"), see 42 U.S.C. § 2000cc-1; and (5) a conspiracy claim.[5]

Defendants moved to dismiss Noble's complaint.  The District Court granted their

motion, dismissing with prejudice Noble's claims against Stella, Erickson, and Balestieri,

as well as his claims brought against any defendant in an official or supervisory capacity,

and his Fourteenth Amendment conditions of confinement claim.  Noble was granted

leave to amend his other claims.  Defendants then moved to dismiss Noble's amended

complaint, which the District Court granted in part and denied in part: it dismissed

Noble's equal protection claim with prejudice, but Noble's remaining four claims against

Longstreth, Gilmore, and Wetzel survived.  Ultimately, the District Court granted

summary judgment in favor of Longstreth, Gilmore, and Wetzel on Noble's Eighth

Amendment, First Amendment, RLUIPA, and conspiracy claims.  Noble sought

reconsideration, which was denied, and timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review

---

[4]  Noble named an additional defendant in his initial complaint — the Program Review
Committee — but he did not name this defendant in his subsequent amended complaint
and does not discuss this defendant on appeal.

[5]  Noble brought two additional constitutional claims that he has not discussed in his
detailed appellate brief.  He has thus forfeited any challenge to the resolution of those
issues on appeal.  See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016).

4

over the District Court's dismissal of Noble's claims. See Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). In reviewing a dismissal for failure to state a claim, "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). Dismissal is appropriate "if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility." Id.

We also exercise plenary review over the District Court's grant of summary judgment. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

III.

We agree with the District Court's disposition of Noble's claims. First, Noble's claims against Longstreth, Gilmore, and Wetzel in their official capacities were all barred by Eleventh Amendment immunity, which protects a state or a state agency from suit unless Congress has specifically abrogated the state's immunity or the state has waived its immunity. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 120-21 (1984) ("The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest.") (internal quotation marks and citation omitted). Noble

5

does not meaningfully address this issue in his appellate brief, and he has identified no waiver of immunity that may be applicable in this case. Further, to the extent that Noble sought to bring claims against these defendants solely in a supervisory capacity, such claims are not cognizable under § 1983. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.")

Next, Noble's claims against prison counselors Balestieri, Stella, and Erickson were filed outside of the statue of limitations for civil rights claims, which is two years in this case. See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009); see also 42 Pa. Cons. Stat. § 5524(2). Noble made allegations about these defendants' actions in 2013, 2015, and July 2016, respectively, claiming that Balestieri, Stella, and Erickson were his prison counselors at those times and that they compiled allegedly inaccurate information about his STG status. But Noble filed this lawsuit on August 31, 2018, more than two years later. Although he maintains that he did not discover their actions until January 2018, he did not allege that Balestieri, Stella, or Erickson took any action relating to his STG classification after July 2016.[6]

---

[6] Noble argues in his appellate brief that the statute of limitations should be tolled due to these defendants' fraudulent concealment of their actions, but he has made no factual allegations of either fraud or concealment by Balestieri, Stella, or Erickson. See Mest v. Cabot Corp., 449 F.3d 502, 516 (3d Cir. 2006). His argument that the continuing violation doctrine tolls the limitations period is also unavailing, as that doctrine focuses on "affirmative acts" of defendants, and Noble alleged no such acts after July 2016. See Tearpock-Martini v. Borough of Shickshinny, 756 F.3d 232, 236-37 (3d Cir. 2014).

6

The District Court also appropriately dismissed Noble's Fourteenth Amendment claim against Longstreth, Gilmore, and Wetzel in their personal capacities, relating to his RHU confinement. To the extent that he sought to bring a procedural due process claim, he never specifically alleged that any "procedures Defendants made available to him did not provide due process of law." See Steele v. Cicchi, 855 F.3d 494, 507 (3d Cir. 2017). To the extent that Noble was seeking to assert a substantive due process claim, he has acknowledged that he was moved back to the RHU after he was found to have assaulted a prison staff member in 2014, and that he had a lengthy history of violent incidents, although he vaguely denies some of the circumstances underlying those incidents. Accordingly, Noble has not alleged that these defendants' actions were so arbitrary, ill-conceived, or malicious as to "shock the conscience." See Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227, 241 (3d Cir. 2013) (citation omitted).

Noble's equal protection claim was similarly properly dismissed, after Noble was given an opportunity to amend this claim.[7] At no point has Noble alleged that he was treated differently than similarly situated individuals. See Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008) ("To state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant.").

Wetzel, Gilmore, and Longstreth were entitled to summary judgment on Noble's

---

[7] The District Court did not abuse its discretion in granting defendants' motion to strike portions of Noble's amended complaint, as those allegations referenced claims that were already dismissed with prejudice in his original complaint. See United States v. Ancient Coin Collectors Guild, 899 F.3d 295, 312 (4th Cir. 2018).

7

claims that survived dismissal. First, "[t]o determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities; and (2) the prison official must have been deliberate[ly] indifferen[t] to inmate health or safety." Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (alterations in original) (internal quotation marks and citation omitted).

After careful review of the record, we agree with the District Court that although Noble's lengthy detention in solitary confinement met the objective first prong of that test, no genuine issue of material fact existed as to whether he could meet the subjective second prong. As the District Court explained in further detail, Noble cannot point to evidence in the record showing that he was housed in the RHU for any reason other than a pattern of violent behavior against staff and other inmates, most recently in 2014, after he was released from the RHU and housed with the general population. See id. at 446 (explaining that "[i]n evaluating the subjective prong of the Eighth Amendment test, we may . . . consider whether officials had a legitimate penological purpose behind their conduct," such as whether defendants "offered any evidence about the risk that [the plaintiff] specifically poses") (internal quotation marks and citation omitted); see also Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (noting that a nonmoving party "cannot simply reassert factually unsupported allegations" to overcome summary judgment).

For Noble's First Amendment claim, the record evidence demonstrates that Noble

8

was placed on the RRL and in the RHU because of his pattern of violent conduct, rather than any religious belief or practice. See Pell v. Procunier, 417 U.S. 817, 822 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."). The evidence also shows that requests for NGE adherents — including NGE books, communal viewing or listening to certain resources, and access to a religious advisor — have been approved. Noble's speculative allegation that he stopped requesting NGE materials because he fears they could be confiscated is not factual evidence in support of his asserted First Amendment claim. See Bell v. United Princeton Props., Inc., 884 F.2d 713, 720 (3d Cir. 1989).

Next, RLUIPA does not permit actions for damages against state officials in their individual capacities, and Noble has identified no waiver of immunity that may be applicable in this case. See Sharp v. Johnson, 669 F.3d 144, 153-55 (3d Cir. 2012). And because Noble has been transferred from SCI-Greene to a different facility, he cannot pursue his remaining requests for injunctive or declaratory relief under RLUIPA.[8] See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003), as amended (May 29, 2003) ("An inmate's transfer from the facility complained of generally moots . . . equitable and declaratory claims.").

Finally, beyond his own unsupported conjecture, Noble cannot point to evidence

---

[8] Because the record does not suggest that Noble will be transferred back to SCI-Greene, this general rule applies here. Additionally, the elements necessary to invoke the "capable of repetition" exception to the mootness doctrine are not present in this case. See Weinstein v. Bradford, 423 U.S. 147, 149 (1975).

9

that any set of defendants came to an understanding or agreement to conspire against

him.[9]  See Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) ("To

constitute a conspiracy [under § 1983], there must be a 'meeting of the minds.'") (citation

omitted).

For these reasons, we will affirm the judgment of the District Court.

---

[9]  Noble does not appear to challenge the District Court's denial of his motion for
reconsideration in his appellate brief, but in any event, we perceive no abuse of discretion
in the District Court's decision.  See Max's Seafood Cafe ex rel. Lou-Ann, Inc. v.
Quinteros, 176 F.3d 669, 673 (3d Cir. 1999).